STATE v. LOVETT

[119 N.C. App. 689 (1995)]

No. COA95-255

(Filed 1 August 1995)

**1. Evidence and Witnesses § 1832 (NCI4th)— chemical analysis of blood—written notice of rights given**

There was no merit to defendant's contention that the trial court erred by denying his motion to suppress blood test results because the chemical analyst did not give him notice in writing of his rights, since the chemical analyst placed the written rights form with defendant's emergency room chart; defendant was not capable of signing the form because his hands were strapped down and IVs were in both arms; there was effectively no other means by which the notice could have been given to him; and defendant was clearly informed of his rights and waived them. N.C.G.S. § 20-16.2.

**Am Jur 2d, Evidence §§ 1021, 1022.**

**2. Automobiles and Other Vehicles § 789 (NCI4th)— felony death by vehicle—no lesser included offense of involuntary manslaughter**

The trial court did not err in failing to instruct the jury on felony death by vehicle, since that is not a lesser included offense of involuntary manslaughter.

**Am Jur 2d, Automobiles and Highway Traffic §§ 328 et seq.**

**3. Criminal Law § 1214 (NCI4th)— defendant's remorse—failure to find mitigating factor—no error**

The trial court did not err in failing to find as a nonstatutory mitigating factor for second-degree murder that defendant showed remorse, was sorry, and accepted full responsibility.

**Am Jur 2d, Homicide §§ 549-555.**

Appeal by defendant from judgment entered 1 September 1994 by Judge J. Marlene Hyatt in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 July 1995.

Defendant was charged with the murder of Billy Mayhew in violation of N.C. Gen. Stat. § 14-17 (1993). Evidence was presented by the State at trial as follows:

Robert Woods testified that on 18 December 1993 he and defendant, who is his cousin, were shooting some pool and drinking beer with friends at the Blue Star Lounge in Charlotte. Sometime around 11:00 p.m., Woods decided he wanted to leave. After he and the others got out the door, Woods thought he had left his car keys inside and he went back inside. When he walked back outside, defendant was driving his car up the street. Woods and the others were shocked by defendant's actions. After waiting for defendant to return, Woods left the scene in a taxi. He eventually reported what had happened to the police.

Woods further testified that he later saw defendant at the hospital. Defendant told him he did not know what happened. He also told Woods: "[H]ey, I can't bring back anybody and the car is gone; so, you know, you got to keep on moving on."

Mike Stevens testified that between 10:30 and 11:00 p.m. on 18 December 1993, he and his wife were travelling down The Plaza in Charlotte in their van when a car without its headlights on ran a stop sign and struck the van. The van was knocked into a nearby parking lot. Stevens got out of the van expecting to find someone hurt in the small car. Instead, he saw the car proceeding down The Plaza dragging metal.

Officer Robert Gilbert of the Charlotte-Mecklenburg Police Department testified that on 18 December 1993 he was responding to a call when he saw several people in two different stopped cars attempting to flag him down. The people seemed excited and irate. After speaking with the people, Officer Gilbert turned his car around and headed toward The Plaza. He saw another two stopped vehicles. A woman in one of them was pointing down the road. As Officer Gilbert drove in the direction the woman had pointed, another officer riding with him heard a loud noise. Officer Gilbert drove in the direction of the noise and found a "real bad traffic accident." A small vehicle and a Lincoln Continental had collided. Officer Gilbert approached the small vehicle. In the driver's seat of the car was

defendant who seemed to be pinned. A "very, very strong odor of alcohol" was coming from the car. Defendant kept saying that he was thrown into the vehicle.

Lafayette Butler, a railroad police officer, testified that on 18 December 1993 he and another officer were patrolling railroad property when they approached an intersection. A station wagon was stopped at the light. When the light turned green, the station wagon entered the intersection and a small car without its headlights on ran the red light, forcing the station wagon off the street. Butler and the other officer followed the car which continued at a high rate of speed without its headlights on. At the next intersection, the car ran a red light without its brake lights coming on.

Tommy Hanks, a railroad police officer, testified that he was with Officer Butler on 18 December 1993. He and Butler were about fifty yards behind defendant's car when it collided with a bigger car in an intersection. The traffic light was red when defendant's car entered the intersection.

June Clark, Jr., testified that he was a captain with the Charlotte Fire Department. On 18 December 1993 Clark rode with two paramedics to the scene of the accident. He approached defendant's car and asked him some questions to assess his injuries. Defendant said that he had been drinking and that he did not care what the police did with him or his car.

Denna Gaston, a paramedic, testified that she attended to defendant after the accident on 18 December 1993. Defendant smelled of alcohol and told Gaston that he had been drinking.

Charles Adkins, a Charlotte police officer, testified that he asked defendant to submit to a breathalyzer test at the hospital. Another officer read defendant his rights to refuse chemical analysis. When given the option of submitting to a breathalyzer or having blood taken, defendant asked which test would result in the most pay for the officers. One of the officers said that it did not matter either way, and defendant said: "Well, I don't give a shit; do whatever you want to, then." Blood was then drawn from defendant.

James Ploger, a sergeant with the Mecklenburg County Sheriff's Department, testified that he was called to the Carolinas Medical Center in the early morning hours of 19 December 1993 to inform defendant of his rights and witness the taking of a blood sample. After Ploger read defendant his rights, defendant said that he did not want

an attorney. Defendant could not sign the rights form because he was strapped down and had IVs in his arms.

Tony Aldridge testified that he was a criminalist for the Charlotte-Mecklenburg Police Department. He analyzed the blood taken from defendant and found the blood alcohol concentration to be .143.

The jury found defendant guilty of second degree murder. From a judgment imposing a prison sentence of forty-five years, defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Linda M. Fox, for the State.*

*Paul J. Williams for defendant appellant.*

ARNOLD, Chief Judge.

**[1]** Defendant first argues that the trial court erred by denying his motion to suppress the blood test results. Specifically, defendant contends the chemical analyst did not give him a notice in writing of his rights in violation of N.C. Gen. Stat. § 20-16.2 (1993). We disagree.

N.C. Gen. Stat. § 20-16.2 (1993) provides in pertinent part as follows:

[B]efore any type of chemical analysis is administered the person charged must be taken before a chemical analyst authorized to administer a test of a person's breath, who must inform the person orally and also give the person a notice in writing that:

(1) He has a right to refuse to be tested.

(2) Refusal to take any required test or tests will result in an immediate revocation of his driving privilege for at least 10 days and an additional 12-month revocation by the Division of Motor Vehicles.

(3) The test results, or the fact of his refusal, will be admissible in evidence at trial on the offense charged.

(4) His driving privilege will be revoked immediately for at least 10 days if:

a. The test reveals an alcohol concentration of 0.08 or more; or

b. He was driving a commercial motor vehicle and the test reveals an alcohol concentration of 0.04 or more.

**STATE v. LOVETT**

[119 N.C. App. 689 (1995)]

(5) He may have a qualified person of his own choosing administer a chemical test or tests in addition to any test administered at the direction of the charging officer.

(6) He has the right to call an attorney and select a witness to view for him the testing procedures, but the testing may not be delayed for these purposes longer than 30 minutes from the time he is notified of his rights.

Defendant does not contend that he was not informed orally of his rights or that he did not waive them. Instead, he contends the chemical analyst failed to "give" him notice in writing.

Evidence presented at the suppression hearing shows that the chemical analyst, Deputy Ploger, placed the written rights form with defendant's emergency room chart. Defendant was not capable of signing the form since his hands were strapped down and IVs were in both arms. Deputy Ploger testified that he would normally have placed the written rights form in defendant's "E.R. bag," but that defendant did not have one.

Deputy Ploger's placement of the written rights form with defendant's emergency room chart was tantamount to "giving" defendant notice in writing. In light of the treatment defendant was receiving for his injuries, there was effectively no other means by which the notice could have been given to him. Clearly, defendant was informed of his rights and he waived them. The trial court did not err by denying defendant's motion to suppress.

**[2]** Defendant next argues that the trial court committed "plain error" by failing to instruct the jury on felony death by vehicle because it is a lesser included offense of involuntary manslaughter and by erroneously instructing the jury regarding misdemeanor death by vehicle. We disagree.

Defendant did not object to the trial court's omission of an instruction on felony death by vehicle. Nor did he assign error to the trial court's instructions on this basis. He contends this Court should nonetheless address his argument pursuant to a "plain error" analysis.

The "plain error" rule, adopted by our Supreme Court in *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983), allows for review of alleged errors although no objection was made to them at trial. The rule mitigates the potential harshness of Rules 10(b)(1) and 10(b)(2)

of the North Carolina Rules of Appellate Procedure. However, the rule does not waive N.C.R. App. P. 10(a) which limits the scope of appellate review to the assignments of error set out in the record on appeal. Therefore, a "plain error" analysis is not available to defendant in this case since he failed to make the trial court's omission of the instruction in question, the subject of an assignment of error.

Even if the question were properly before this Court, it is meritless. It is well-settled that felony death by vehicle is not a lesser included offense of involuntary manslaughter. *State v. Byers,* 105 N.C. App. 377, 413 S.E.2d 586 (1992); *State v. Williams,* 90 N.C. App. 614, 369 S.E.2d 832, *disc. review denied,* 323 N.C. 369, 373 S.E.2d 555 (1988).

Defendant contends the trial court erred by instructing the jury that speeding was the underlying offense as to misdemeanor death by vehicle. While there was ample evidence to instruct that running the red light was the underlying offense, there was also sufficient evidence to show that speeding was the underlying offense. Defendant, having been found guilty of second degree murder, has failed to show that he was prejudiced in any way by the trial court's instruction as to misdemeanor death by vehicle. His argument is meritless.

[3] Finally, defendant argues that the trial court erred by failing to find as a nonstatutory mitigating factor that he "showed remorse, was sorry, and accepted full responsibility." We disagree.

Failure to find a nonstatutory mitigating factor, even if it is supported by uncontradicted, substantial, and manifestly credible evidence, will not be disturbed absent an abuse of discretion. *State v. Spears,* 314 N.C. 319, 333 S.E.2d 242 (1985). In this case, the evidence showed that defendant told his cousin that he was sorry and took full responsibility, but he also said to his cousin: "[H]ey, I can't bring back anybody and the car is gone; so, you know, you got to keep on moving on." During sentencing, defendant asked the victim's family to forgive him for his negligence or irresponsibility. While this evidence may show that defendant had some regrets concerning his actions, particularly following his conviction for second degree murder, it does not mandate a finding of a nonstatutory mitigating factor. The trial court did not abuse its discretion by failing to find the factor.

We hold defendant had a fair trial, free from prejudicial error.

No error.

Judges COZORT and GREENE concur.