STATE OF NORTH CAROLINA v. KEMUND LAMONT LEE, DEFENDANT

No. COA97-302

(Filed 3 February 1998)

**1. Criminal Law § 504 (NCI4th Rev.)— fingerprint card—jury view in open court—no abuse of discretion**

In a prosecution for second-degree rape, first-degree burglary, and robbery with a dangerous weapon, the trial judge did not abuse its discretion by allowing the jury to view a fingerprint card in open court after it began its deliberations despite the parties' objections to a jury request to view the card where the trial judge's decision was based on the fact that the fingerprint had been admitted into evidence and there was no eyewitness identification of defendant. N.C.G.S. § 15A-1233(b).

**2. Robbery § 66 (NCI4th)— armed robbery—threat to use gun—sufficient evidence**

There was sufficient evidence that defendant threatened to use a gun to support his conviction of armed robbery where the evidence at trial showed that defendant purposely covered the victim's face during the robbery, threatened the victim that he would shoot her if she resisted him, and asked during the robbery where he had dropped his gun. N.C.G.S. § 14-87(a).

**3. Evidence and Witnesses § 1865 (NCI4th)— fingerprint—impression at time of crime—sufficient evidence**

There was sufficient evidence for a jury to conclude that defendant's fingerprints were impressed on a greeting card while committing a crime at the victim's residence where the evidence showed that (1) defendant's fingerprint was found on a card which was concealed in a private location at the victim's residence; (2) the card had been mailed to the victim from a remote location; (3) the victim told defendant during the assault about a card containing money in a dresser drawer; (4) the victim heard defendant fumbling around in the drawer and the money was gone from the card after defendant left; and (5) the victim did not know defendant, had not seen him before, and had never authorized defendant to lawfully possess the card.

Appeal by defendant from judgment entered 16 July 1996 by Judge Stafford G. Bullock in Wake County Superior Court. Heard in the Court of Appeals 6 January 1997.

Defendant was convicted of second degree rape, first degree burglary, and robbery with a dangerous weapon. He was sentenced to a minimum of 101 months and a maximum of 131 months for the first degree burglary and robbery with a dangerous weapon and a minimum sentence of 115 months and a maximum sentence of 147 months for the second degree rape charge.

At trial the evidence tended to show that on 22 September 1995, Ann Green was alone in her apartment in Raleigh. Around 2:30 a.m., she was in bed when defendant jumped on her. The victim felt coarse hair on the defendant's head and gloves on his hands. After a brief struggle, defendant covered the victim's head with a pillow. Defendant told her that if she resisted he would shoot her. Defendant then knocked the victim onto the floor and put a T-shirt over her head. Defendant asked the victim for money. The victim told defend-

STATE v. LEE

[128 N.C. App. 506 (1998)]

ant that there was money in her jeans pocket and in a greeting card sent to the victim by her mother. The card was located in a dresser drawer. The victim testified that she heard the defendant fumbling around in the dresser drawer and when she checked later the money in her pocket as well as in the greeting card was gone.

The victim also testified that during the attack she had the opportunity to feel defendant's hands and that at some point he had removed the gloves. After the victim heard defendant fumbling around in the dresser drawer, the defendant removed the victim's pajama bottoms, unbuckled his belt and raped the victim. The defendant then heard a noise and left the apartment.

Sidney Johnson, a Deputy Sheriff with the City County Bureau of Identification, processed the apartment for latent fingerprints. Deputy Johnson found a latent fingerprint on a greeting card on top of the dresser in the victim's room. Marty Ludas, a latent print examiner with the City County Bureau of Identification, and Haywood R. Starling, a fingerprint identification expert and former director of the North Carolina State Bureau of Investigation, each testified that in his expert opinion, the latent fingerprint was made by the defendant's finger. The State then rested. Upon the defendant's motion to dismiss the charges, the trial court dismissed the first degree rape charge. The State proceeded on second degree rape, robbery with a dangerous weapon, and first degree burglary. Defendant introduced the laboratory report from the rape kit into evidence. The report indicated that there was no semen, hair or blood exchanged. The defendant rested. After beginning deliberations, the jury requested they be allowed to look at the fingerprint card. Both the State and the defense objected to the publication of the fingerprint card. The trial court overruled both objections and allowed the jury to examine the fingerprint card in the courtroom. The jury returned a guilty verdict as to all charges. Defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Daniel D. Addison, for the State.*

*John T. Hall for defendant-appellant.*

EAGLES, Judge.

[1] We first consider whether the trial court erred in permitting the jury, at its request, to view the fingerprint card containing fingerprints obtained at the scene of the crime. Defendant argues that the

trial court erred by allowing the jury, after beginning their delibera-
tion, to examine State's Exhibit number one, a fingerprint card con-
taining the latent print obtained from the greeting card found in the
apartment of the victim, Ms. Green. We disagree.

If a jury after retiring requests to review the evidence, the judge
in his discretion, after notice to the prosecutor and defendant, may
permit the jury to examine in open court any requested materials
which have been admitted into evidence. G.S. 15A-1233(a). By con-
trast, G.S. 15A-1233(b) provides: "Upon request by the jury and with
the consent of all parties, the judge may in his discretion permit the
jury to take to the jury room exhibits and writings which have been
received into evidence." In order for the trial judge to allow the jury
to take the requested evidence into the deliberation room, the judge
must have consent from both the State and the defendant. However,
if the judge simply lets the jury examine the requested evidence in
open court but does not allow the jury to take it into the jury room,
there is no necessity for obtaining the consent of the parties.

Here, the judge permitted the jury, as it requested, to view in
**open court** the fingerprint card containing the defendant's latent
fingerprint. The judge specifically denied the jury's request to take
the fingerprint card back into the jury room. Accordingly, this assign-
ment of error fails.

In order to show that the trial judge erred in permitting the jury,
without consent of the State and the defendant, to view the evidence
in the courtroom, defendant must show that the trial court abused its
discretion. G.S. 15A-1233(b). To show an abuse of discretion,
"defendant must demonstrate that the trial court's action was so arbi-
trary that it could not have been the result of a reasoned decision."
*State v. Cannon*, 341 N.C. 79, 87, 459 S.E.2d 238, 243 (1995) (quoting
*State v. Weddington*, 329 N.C. 202, 209, 404 S.E.2d 671, 676 (1991)
(quoting *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465
(1985)).

Here, the trial judge's decision was based on the fact that the fin-
gerprint card had been admitted into evidence and that there was no
eyewitness identification of defendant. Given the significance of the
fingerprint identification evidence, the trial judge's decision is a rea-
soned one. Accordingly, we conclude the trial court did not abuse its
discretion and this assignment of error is overruled.

[2] We next consider whether the trial court erred in denying defend-
ant's motion to dismiss. Defendant asserts that the evidence intro-

duced at trial was insufficient to support the charges and convictions. Defendant argues that the victim was unable to identify him as the perpetrator.

Concerning defendant's motion to dismiss the charge of robbery with a dangerous weapon, defendant argues that there was insufficient evidence that defendant had a firearm at the time of the robbery. Defendant argues that because the trial judge dismissed the first degree rape charge for insufficient evidence of a firearm, the judge was required to dismiss the armed robbery charge for the same reason. We disagree.

A defendant may be convicted of first degree rape if, while committing the crime, he "*employs or displays* a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon." G.S. 14-27.2. (Emphasis added). By contrast, a defendant may be convicted of armed robbery if he commits the robbery "having in possession or with *the use or threatened use*" of any firearm or other dangerous weapon. G.S. 14-87(a). (Emphasis added). To obtain a conviction for armed robbery, it is not necessary for the State to prove that the defendant displayed the firearm to the victim. Proof of armed robbery requires that the victim reasonably believed that the defendant possessed, or used or threatened to use a firearm in the perpetration of the crime. *State v. Thompson*, 297 N.C. 285, 289, 254 S.E.2d 526, 528 (1979). The State need only prove that the defendant represented that he had a firearm and that circumstances led the victim reasonably to believe that the defendant had a firearm and might use it. *State v. Williams*, 335 N.C. 518, 522, 438 S.E.2d 727, 729 (1994).

*In State v. Williams*, the Court concluded that the defendant's verbal representations to his victims that he had a firearm and that he would shoot them entitled the State to a presumption that the defendant used a firearm.

> [W]here there is evidence that a defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon *and nothing to the contrary appears in the evidence*, the presumption that the victim's life was endangered or threatened is mandatory.

*Williams*, 335 N.C. at 521, 438 S.E.2d at 728. Here, defendant purposely covered the victim's face during the robbery. He told Ms. Green several times that he would shoot her if she resisted. At one

point during the robbery and assault, defendant even said "Where did I drop my gun?" In addition, the defendant only introduced evidence relating to the results of the rape kit. Accordingly, we hold there was substantial evidence showing the defendant threatened to use a gun, and "*the law presumes*, in the absence of any evidence to the contrary, that the instrument is what his conduct represents it to be—an implement endangering or threatening the life of the person being robbed." *Williams*, 335 N.C. at 521, 438 S.E.2d at 728. This assignment of error is overruled.

[3] Defendant next argues that there was insufficient evidence to show that he left his fingerprint on the victim's greeting card at the time of the crimes charged. Defendant also argues that he could have touched the card somewhere else. We disagree.

"Testimony by a qualified expert that fingerprints found at the scene of the crime corresponded with the fingerprints of the accused, when accompanied by substantial evidence of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed," is sufficient to withstand a motion to dismiss. *State v. Scott*, 296 N.C. 519, 523, 251 S.E.2d 414, 417 (1979). There is substantial evidence to meet this requirement if the occupant of the premises, who might reasonably be expected to have seen the defendant had he ever been present lawfully, has been able to testify that she had never given defendant permission to come on the premises and had never seen him there before the commission of the crime. *Id.* This kind of evidence is particularly convincing when the crime scene is a private residence not accessible to the general public.

Here, there was evidence that 1) defendant's fingerprint was found on a card which was in a concealed location in a private residence; 2) the card had been mailed to Ms. Green from a remote location; 3) Ms. Green told the defendant during the assault about a card containing money in a dresser drawer; 4) the victim heard the defendant fumbling around in the drawer and the money was gone from the card after the defendant left; and 5) Ms. Green did not know the defendant, had not seen him before, and had never authorized him to lawfully possess the greeting card. This is sufficient evidence for a jury to conclude that the defendant left his fingerprint on the card while committing the crimes. Accordingly, this assignment of error is overruled.

Affirmed.

Judges WYNN and WALKER concur.