STATE OF NORTH CAROLINA v. JAMES BARTLEY, JR.

No. COA02-500

(Filed 18 March 2003)

**1. Robbery— dangerous weapon—challenge to sufficiency of evidence—failure to move for motion to dismiss**

The trial court did not err by failing to dismiss the charge of felonious robbery with a dangerous weapon, because: (1) N.C. R. App. P. 10(b)(3) provides that a defendant in a criminal case may not assign as error the insufficiency of the evidence to prove the crime charged when he did not move to dismiss the charge against him, and defendant in this case did not move to dismiss the charge against him; (2) defendant's attempt to invoke plain error review is inappropriate when the assignment of error concerns the sufficiency of the evidence and not an instructional error or an error concerning the admissibility of evidence; and (3) there was sufficient evidence that defendant was armed even though defendant contends he never made a verbal statement that he had a gun or that he would shoot the victim.

STATE v. BARTLEY

[156 N.C. App. 490 (2003)]

**2. Robbery— dangerous weapon—failure to instruct on lesser-included offense of common law robbery**

The trial court did not commit plain error in a robbery with a dangerous weapon case by failing to instruct the jury on the lesser-included offense of common law robbery, because common law robbery involves the use of violence or fear generally whereas robbery with a dangerous weapon involves the use of a dangerous weapon to create this violence or fear, and the only evidence of the use of violence or fear in this case was through defendant's alleged brandishing of a firearm.

**3. Robbery— dangerous weapon—indictment—ownership of stolen property**

An indictment which alleged that defendant took and carried away "personal property of Crown Fast Fare #729, U.S. Currency, from the person and presence of James Burke" by threatening use of a dangerous weapon sufficiently identified the owner of the property allegedly stolen by defendant because: (1) the key is whether the indictment is sufficient to negate the idea that defendant was taking his own property; and (2) the language in the indictment sufficiently does so.

**4. Robbery— dangerous weapon—jury instruction—mandatory presumption victim's life endangered and threatened by firearm**

The trial court did not err in a robbery with a dangerous weapon case by instructing the jury that a mandatory presumption existed that the victim's life was endangered and threatened by a firearm, because: (1) defendant cannot attempt to invoke plain error review when the challenge is to the sufficiency of the evidence; and (2) even if plain error review were available, the jury instruction was supported by the law.

**5. Sentencing— prior record level—robbery with a dangerous weapon**

The trial court erred in a robbery with a dangerous weapon case by sentencing defendant as a prior record level IV based on the State's uncontested and unsupported statement that defendant had eleven points placing him in that record level, because: (1) N.C.G.S. § 15A-1340.14 requires that each of a felony offender's prior convictions be proven to determine the offender's prior record level and that the State bears the burden of proving any prior convictions by a preponderance of the evi-

dence; and (2) the State failed to present evidence in the form of a stipulation of the parties, a copy of the court record of defendant's prior convictions, or a copy of any record maintained by the Division of Criminal Information, the Division of Motor Vehicles, or the Administrative Office of the Courts.

Appeal by defendant from judgment dated 25 October 2001 by Judge Herbert O. Phillips, III in Superior Court, New Hanover County. Heard in the Court of Appeals 30 January 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Neil Dalton, for the State.*

*Parish & Cooke, by James R. Parish, for defendant-appellant.*

McGEE, Judge.

James Bartley, Jr. (defendant) was found guilty on 25 October 2001 of robbery with a dangerous weapon in violation of N.C. Gen. Stat. § 14-87. The trial court entered judgment, finding defendant to have a prior record level of IV, and sentenced defendant to a minimum term of 105 months and a maximum term of 135 months active imprisonment. Defendant appeals the conviction.

The State's evidence at trial tended to show that at approximately 12:30 a.m. on 8 May 2001, James Burke (Burke) was working at the Crown Fast Fare Convenience Store (store) in Wilmington, North Carolina when he heard a bell ring signaling that someone had entered the store. Burke was at the rear of the store facing away from the entrance. When he turned around, Burke saw a man in a blue jacket with a white T-shirt covering his face, who had his hand in his pocket as if he was brandishing a gun in the pocket. That man was later identified as defendant. Burke testified that defendant "made like he had a gun. He had his pocket up like this and make [sic] like he had a gun." When Burke saw defendant he immediately raised his hands over his head. Defendant began screaming, "give me the money, give me the money" and Burke ran to the front counter with his hands still over his head. While Burke was behind the counter, he managed to push a panic button on a beeper he wore which notified a security service of the robbery. Defendant kept saying "give me the money, give me the money" and acting as if he was brandishing a gun inside his coat pocket while Burke tried to reassure defendant he was complying as quickly as possible. Burke opened the cash register and engaged a second panic button. He took out all the money in the reg-

ister, approximately $27.00, and threw it on the counter with a couple of rolls of pennies, saying "that's all I can give you." Burke noted that defendant seemed very nervous and in a hurry. Defendant grabbed the money and ran out of the store.

At the same time, Jerry Lanning (Lanning), a college student, was driving past the store and saw defendant run out of the store. As Lanning drove closer to the store, defendant stopped running and began to walk. Lanning saw defendant get into an older model blue, two-door, foreign car parked in an auto sales lot next to the store. Defendant pulled out of the parking lot at a high rate of speed and began following Lanning very closely. Defendant passed Lanning's car in the center turn lane, and Lanning noted the license tag number of defendant's vehicle. Lanning returned to the store to see what had happened.

After defendant left the store, Burke called 911 to report the incident. Burke gave a description of defendant, describing him as good-sized, well-built with dark hair, appearing to be either Spanish or Hispanic. While Burke was on the telephone, Lanning entered the store. Lanning told Burke what he had seen. Lanning also spoke to the dispatcher, giving a similar description of defendant, a description of the car and its license tag number. Lanning described defendant as large, with a dark complexion and facial hair, wearing "all blue" clothing, long sleeves, long pants, and having his hands full as if he had something in them. The police were also informed that defendant was barefoot.

Officer Fred Elder (Officer Elder) of the Wilmington Police Department testified he was on patrol that night when he received a report to be on the lookout for a person matching the descriptions given by Burke and Lanning and driving a car of the type and with the license tag number described by Lanning, in connection with an armed robbery. After the license tag number was checked, Officer Elder was told to go to a residence in a trailer park to look for the owner of a car matching the description. Officer Elder arrived at the residence at approximately 1:10 a.m. and was there for about five minutes when a vehicle drove up with its headlights off. Defendant, the driver of the vehicle, was a heavy-set Hispanic man who was barefoot and was wearing blue jeans and a shirt. Officer Elder arrested defendant, searched defendant and the vehicle, and found a blue jacket in the vehicle. Officer Elder did not find a firearm in his search of either defendant or defendant's vehicle.

Shortly after defendant's arrest, Burke was taken to defendant's house in a police car. Burke stated that because the suspect's face had been covered, he could not be 100 percent certain in his identification of defendant, but because of other identifying features of the suspect, Burke identified defendant as the man who had robbed the store earlier that night. Lanning was also taken to where defendant was located. Lanning stated that he was 100 percent certain defendant was the man he had seen running from the store earlier that night and who had gotten into the vehicle Lanning had previously described.

Defendant's wife testified that she did not recognize her husband as the perpetrator on the surveillance tape of the store the night in question, and that her husband did not own a blue jacket like the one found by police. However, defendant's wife did testify that her husband was not at home at the time of the robbery. Defendant did not testify.

I.

[1] Defendant argues that, even though he did not move to dismiss the charge against him, the trial court erred by failing to dismiss the charge of felonious robbery with a dangerous weapon due to the insufficiency of the evidence. N.C.R. App. P. 10(b)(3) states in pertinent part:

> A defendant in a criminal case may not assign as error the insufficiency of the evidence to prove the crime charged unless he moves to dismiss the action, or for judgment as in case of nonsuit, at trial.

Defendant did not move to dismiss the charge against him, and thus did not meet the requirements of N.C.R. App. P. 10(b)(3). Defendant's attempt to invoke plain error review is inappropriate as this assignment of error concerns the sufficiency of the evidence, not an instructional error or an error concerning the admissibility of evidence. *See State v. Steen*, 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001). However, even if we were to review defendant's first assignment of error on its merits, there is sufficient evidence to submit the charge of robbery with a dangerous weapon to the jury.

The appropriate test is "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "Substantial evidence is relevant evi-

dence that a reasonable mind might accept as adequate to support a conclusion." *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995) (citation omitted). Our review requires that we consider the evidence in a light most favorable to the State and give the State the benefit of every reasonable inference from that evidence. *State v. Jaynes*, 342 N.C. 249, 274, 464 S.E.2d 448, 463 (1995), *cert. denied*, 518 U.S. 1024, 135 L. Ed. 2d 1080 (1996). This review is the same whether the evidence is direct, circumstantial, or both. *Id.*

The essential elements of robbery with a dangerous weapon are:

"(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened. 'Force or intimidation occasioned by the use or threatened use of firearms, is the main element of the offense.' "

*State v. Small*, 328 N.C. 175, 181, 400 S.E.2d 413, 416 (1991) (quoting *State v. Beaty*, 306 N.C. 491, 496, 293 S.E.2d 760, 764 (1982) and *State v. Mull*, 224 N.C. 574, 576, 31 S.E.2d 764, 765 (1944). Defendant challenges the sufficiency of the evidence as to the second element. Defendant claims that Burke's eyewitness account creates no more than "surmise, conjecture, or suspicion" that defendant was armed, which under *State v. Cutler*, 271 N.C. 379, 156 S.E.2d 679 (1967), would be insufficient to support the charge of robbery with a dangerous weapon. We do not believe that the State's evidence creates merely "surmise, conjecture, or suspicion" as suggested by defendant.

Burke testified that defendant "made like he had a gun. He had his pocket up like this and make [sic] like he had a gun and kept screaming, 'give me the money, give me the money.' " Burke also responded to a question by the State as to whether he knew what was in defendant's pocket at the time by saying, "No. A gun, it was, like, of course." In addition, upon seeing defendant with his hands in his pocket "like he had a gun," Burke's immediate reaction was to raise his hands in the air, a natural reaction of one who believes he is being confronted by someone with a gun. The fact that Burke never actually saw a firearm, never asked if defendant had a firearm, nor sought to prove defendant had a firearm by any other means does not negate Burke's testimony. *State v. Thompson*, 297 N.C. 285, 288-89, 254 S.E.2d 526, 528 (1979) ("We would not intimate, however, that a robbery victim should force the issue merely to determine the true character of the

weapon. Thus, when a witness testified that he was robbed by use of a firearm . . ., his admission on cross-examination that he could not positively say it was a gun or dangerous weapon is without probative value.").

Defendant cites two cases, *State v. Lee*, 128 N.C. App. 506, 495 S.E.2d 373, *disc. review denied*, 348 N.C. 76, 505 S.E.2d 883 (1998) and *State v. Harris*, 115 N.C. App. 560, 445 S.E.2d 626 (1994), and attempts to distinguish the present case. In *Lee*, the defendant covered the victim's face during the crime so that the victim could not actually see the weapon. *Lee*, 128 N.C. App. at 510, 495 S.E.2d at 376. However, in *Lee*, the defendant made several statements to the victim that he would shoot her if she resisted, as well as stating, "[w]here did I drop my gun?". *Id.* at 510-11, 495 S.E.2d at 376. This Court found the facts in *Lee* sufficient to establish that the defendant was armed in that case. *Id.* at 511, 495 S.E.2d at 376.

In the present case, defendant argues that because he never made a verbal statement that he had a gun or that he would shoot Burke, the facts are insufficient to establish that defendant was armed. The legal standard announced in *Lee* is that

> [t]o obtain a conviction for armed robbery, it is not necessary for the State to prove that the defendant displayed the firearm to the victim. Proof of armed robbery requires that the victim reasonably believed that the defendant possessed, or used or threatened to use a firearm in the perpetration of the crime.

*Id.* at 510, 495 S.E.2d at 376. Where the evidence tends to show that the "victim reasonably believed that the defendant possessed, or used or threatened to use a firearm in the perpetration of the crime," *Id.*, the result should be the same whether a defendant verbally stated he had a firearm or, as in the present case, visually indicated he had a firearm, even when the victim did not actually see a firearm.

Similarly, *Harris* does not warrant a different result. In *Harris*, where the defendant made physical contact with the victim and uttered threats that he would cut her, this Court found the evidence sufficient to submit the charge of robbery with a dangerous weapon to the jury. *Harris*, 115 N.C. App. at 563-64, 445 S.E.2d at 629. While the defendant in *Harris* actually touched the victim with a weapon and made verbal threats similar to those in *Lee*, the facts in *Harris* do not establish the minimum that must be shown to submit the charge of robbery with a dangerous weapon to a jury. *See id. Harris* merely

shows one possible way the State may satisfy its burden in a charge of robbery with a dangerous weapon.

Considering the evidence in the present case in a light most favorable to the State, the evidence was sufficient to submit to the jury the charge of robbery with a dangerous weapon. Therefore the trial court did not err in doing so. Defendant's first assignment of error is dismissed.

II.

[2] Defendant also argues that, even though defendant failed to request the instruction, the trial court erred in failing to instruct the jury on the lesser-included offense of common law robbery. Defendant did not object when the trial court submitted to the jury as its possible verdicts, guilty of robbery with a firearm, or not guilty. Normally, a party may not assign as error any portion of a jury charge or omission unless he or she objects before the jury retires. N.C.R. App. P. 10(b)(2). However, under N.C.R. App. P. 10(c)(4), a defendant may assign error where the judicial action questioned is specifically and distinctly contended to amount to plain error. As this is a question concerning jury instructions, plain error review is available to defendant on this issue. *Steen*, 352 N.C. at 256, 536 S.E.2d at 18.

Normally, however, if a defendant fails to assert plain error in an assignment of error, an appellate court will not conduct plain error review. *State v. Truesdale*, 340 N.C. 229, 232-33, 456 S.E.2d 299, 301 (1995); *State v. Lovett*, 119 N.C. App. 689, 693-94, 460 S.E.2d 177, 180-81 (1995). Further, a defendant asserting plain error must, in his brief, "specifically and distinctly" contend that any error committed by the trial court amounted to plain error. *State v. Nobles*, 350 N.C. 483, 514-15, 515 S.E.2d 885, 904 (1999); *State v. Alston*, 131 N.C. App. 514, 517-18, 508 S.E.2d 315, 318 (1998). While defendant could have more clearly indicated his desire for plain error review in his assignment of error, the wording of the assignment shows defendant is seeking such a review. Defendant's argument in his brief supports this contention.

However, under plain error review, defendant's second assignment of error fails. In *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983), our Supreme Court explained that:

"[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error,

something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" ' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.' "

307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir.), *cert. denied,* 459 U.S. 1018, 74 L. Ed. 2d 513 (1982) (internal citations omitted)). Our Supreme Court noted that "every failure to give a proper instruction [does not] mandate[] reversal regardless of the defendant's failure to object at trial," because such a rule would negate the purpose of N.C.R. App. P. 10(b)(2). *Odom,* 307 N.C. at 660, 300 S.E.2d at 378. In fact, even after the adoption of the plain error rule, our Supreme Court noted that " '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' " *Id.* at 660-61, 300 S.E.2d at 378 (quoting *Henderson v. Kibbe,* 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977)). With these principles in mind, we must examine the entire record and determine whether the alleged error in the jury instructions "had a probable impact on the jury's finding of guilt." *Id.* at 661, 300 S.E.2d at 378-79 (citation omitted).

After a thorough review of the record, we find that the trial court's instruction only on the verdicts of guilty of robbery with a dangerous weapon or not guilty do not rise to the level of plain error. The elements of robbery with a dangerous weapon are basically the same as common law robbery, except that common law robbery involves the use of violence or fear generally, and robbery with a dangerous weapon involves the use of a dangerous weapon to create this violence or fear. *Compare State v. Jones,* 339 N.C. 114, 164, 451 S.E.2d 826, 854 (1994), *cert. denied,* 515 U.S. 1169, 132 L. Ed. 2d 873 (1995), *with Small,* 328 N.C. at 181, 400 S.E.2d 416.

In the present case, the only evidence of the use of violence or fear was through defendant's alleged brandishing of a firearm. Therefore, the evidence presented could lead to one of two conclusions: defendant had a firearm and created violence or fear through the use of it, or defendant had no firearm, in which case the State's proof would have failed as to the use of a deadly weapon element of

robbery with a dangerous weapon, as well as the use of violence or fear element of common law robbery. Thus, we find no probable impact on the jury's verdict by the trial court's failure to instruct the jury on common law robbery. Defendant's second assignment of error is overruled.

III.

[3] Defendant next argues that the trial court should have arrested judgment due to the failure of the indictment to sufficiently identify the owner of the property allegedly stolen. We first note that defendant failed to make a request, motion, or objection regarding the sufficiency of the indictment before the trial court. *See* N.C.R. App. P. 10(b).

> As a general rule, a defendant waives an attack on the indictment when the indictment is not challenged at trial. *State v. Robinson*, 327 N.C. 346, 361, 395 S.E.2d 402, 411 (1990). However, when an indictment is alleged to be facially invalid, thereby depriving the trial court of its jurisdiction, it may be challenged at any time, notwithstanding a defendant's failure to contest its validity in the trial court. *State v. Braxton*, 352 N.C. 158, 173, 531 S.E.2d 428, 436-37 (2000), *cert. denied*, [531] U.S. [1130], 148 L. Ed. 2d 797 (2001).

*State v. Call*, 353 N.C. 400, 428-29, 545 S.E.2d 190, 208, *cert. denied*, 534 U.S. 1046, 151 L. Ed. 2d 548 (2001). Our Supreme Court has stated that an indictment is fatally defective when the indictment fails on the face of the record to charge an essential element of the offense. *State v. McGaha*, 306 N.C. 699, 702, 295 S.E.2d. 449, 451 (1982). Defendant in this case contends the indictment fails to charge an essential element of the offense. This issue is therefore properly before this Court.

> The indictment states, in pertinent part that defendant

> unlawfully, willfully and feloniously did steal, take and carry away personal property of Crown Fast Fare #729, U.S. Currency, from the person and presence of James Burke. The defendant committed this act by having in his possession, and threatening the use of a dangerous weapon, to wit: a firearm, whereby the life of James Burke was threatened and endangered.

Defendant specifically argues that the owner of the property in question was not sufficiently identified in this indictment and therefore, judgment should be arrested.

However, in a robbery indictment

> it is not necessary that ownership of the property be laid in a particular person in order to allege and prove armed robbery. The gist of the offense of robbery is the taking by force or putting in fear. An indictment for robbery will not fail if the description of the property is sufficient to show it to be the subject of the robbery and negates the idea that the accused was taking his own property.

*State v. Spillars*, 280 N.C. 341, 345, 185 S.E.2d 881, 884 (1972) (citations omitted). *See also State v. Jackson*, 306 N.C. 642, 650-51, 295 S.E.2d 383, 388 (1982) ("As long as the evidence shows the defendant was not taking his *own* property, ownership is irrelevant. A taking from one having the care, custody or possession of the property is sufficient.") (citations omitted); *State v. Pratt*, 306 N.C. 673, 681, 295 S.E.2d 462, 467 (1982) ("As long as it can be shown defendant was not taking his own property, ownership need not be laid in a particular person to allege and prove robbery.") (citation omitted).

The key inquiry is whether the indictment in the present case is sufficient to negate the idea that the defendant was taking his own property. *See Spillars*, 280 N.C. at 345, 185 S.E.2d at 884. The language in the indictment is sufficient to do so. Accordingly, defendant's third assignment of error is overruled.

IV.

[4] Defendant also argues that the trial court erred in instructing the jury that a mandatory presumption existed that the victim's life was endangered and threatened by a firearm. Defendant argues that such an instruction was not supported by the law or facts of the case. The pertinent portion of the trial court's actual jury instructions were that:

> when a person commits a robbery by the use or threatened use of an implement which appears to be a firearm, the law presumes, in the absence of any evidence to the contrary, that the instrument is what his conduct represents it to be, an implement endangering or threatening the life of the person being robbed. Thus, where there is evidence that a Defendant has committed a robbery with what appears to the victim to be a firearm, and nothing to the contrary appears in evidence, the presumption that the victim's life was endangered or threatened is mandatory.

Defendant did not object at trial to the jury instructions he now challenges, and therefore did not preserve this question for review. N.C.R. App. P. 10(b)(2). However, questions concerning a jury instruction may be made the basis of an assignment of error where the action in question is specifically and distinctly contended to amount to plain error. N.C.R. App. P. 10(b)(4); *see Steen*, 352 N.C. at 256, 536 S.E.2d at 18. As discussed above, normally, if a defendant fails to assert plain error in an assignment of error, an appellate court will not conduct plain error review. *Truesdale*, 340 N.C. at 232-33, 456 S.E.2d at 301; *Lovett*, 119 N.C. App. at 693-94, 460 S.E.2d at 180-81.

While defendant did not assert in his fourth assignment of error that the challenged jury instruction amounted to plain error, he did so assert in his brief. However, this is of little moment because defendant's argument fails on its merits. The jury instructions were supported by the law in that the trial court simply stated the established law of this State that if the jury found that defendant possessed a firearm, the presumption that Burke's life was endangered was mandatory where no evidence was presented to the contrary. *See State v. Williams*, 335 N.C. 518, 521, 438 S.E.2d 727, 728-29 (1994); *State v. Allen*, 317 N.C. 119, 124-26, 343 S.E.2d 893, 897-98 (1986). Further, defendant is actually challenging the sufficiency of the evidence as to whether defendant represented that he had a firearm and whether Burke reasonably believed defendant had a firearm and might use it. As indicated by our discussion concerning defendant's first assignment of error, this argument has no merit. Thus, even if we reviewed his fourth assignment upon its merits, defendant would not prevail. Defendant's fourth assignment of error is dismissed.

V.

[5] Defendant's final assignment of error states that the trial court erred in sentencing defendant as a prior record level IV as the State did not prove, nor did defendant stipulate to, such a record level pursuant to the North Carolina sentencing statutes.

N.C. Gen. Stat. § 15A-1340.14 (2001) requires that each of a felony offender's prior convictions be proven to determine the offender's prior record level. N.C.G.S. § 15A-1340.14 also provides that the State bears this burden of proving any prior convictions by a preponderance of the evidence. N.C. Gen. Stat. § 15A-1340.14(f) (2001) lists several methods the State may use to prove prior convictions:

**STATE v. BARTLEY**

[156 N.C. App. 490 (2003)]

(1) Stipulation of the parties.

(2) An original or copy of the court record of the prior conviction.

(3) A copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts.

(4) Any other method found by the court to be reliable.

In the present case, the prosecutor stated to the trial court that "in this case the defendant has 11 prior sentencing points, which places him in prior Record Level 4." The State presented no evidence in the form of a stipulation by the parties, a copy of the court record of defendant's prior convictions, nor a copy of any record maintained by the Division of Criminal Information, the Division of Motor Vehicles, or the Administrative Office of the Courts. After the State made its statement to the trial court, the trial court began to determine where defendant fit on the appropriate sentencing guideline chart.

We do not find evidence in the record that would indicate that the State carried its burden of proving each prior conviction by a preponderance of the evidence. As stated above, the State submitted no records of conviction, no records from the agencies listed in N.C.G.S. § 15A-1340.14(f)(3), nor is there any evidence of a stipulation by the parties as to prior record level. An unsupported statement by the State that an offender has eleven points, and thus is a record level IV, even if uncontested, does not rise to the level sufficient to meet the catchall provision found in N.C.G.S. § 15A-1340.14(f)(4). *State v. Mack*, 87 N.C. App. 24, 34, 359 S.E.2d 485, 491 (1987), *disc. review denied*, 321 N.C. 477, 364 S.E.2d 663 (1988). *See State v. Hanton*, 140 N.C. App. 679, 690, 540 S.E.2d 376, 383 (2000). We must remand this case for a resentencing hearing due to the failure of the State to meet its burden under N.C.G.S. § 15A-1340.14.

No error in part; remanded in part for resentencing.

Judges HUNTER and CALABRIA concur.