STATE OF NORTH CAROLINA v. ANTONIO DURAND RILEY,
AKA ANTOINE DEANDRE RILEY

No. COA02-1102

(Filed 5 August 2003)

**1. Appeal and Error— plain error—asserted in brief—combined errors**

Defendant's plain error contentions were reviewed, but separately, where he specifically alleged plain error, but attempted to combine assignments of error concerning unrelated evidence.

**2. Evidence— arrest for unrelated crimes—overwhelming evidence of guilt—not plain error**

The admission of testimony that defendant was also arrested for crimes for which he was not on trial was not plain error, given the overwhelming evidence that defendant committed the crimes charged.

**3. Evidence— photos—gang brands and tattoos—Miranda**

There was no plain error in the admission of an officer's testimony about the meaning of photos of defendant's tattoos and brands, which allegedly depict gang membership, where defendant contended that the information was obtained after he had indicated that he did not want to be questioned without an attorney. Defendant did not object to testimony that the markings indi-

cated membership in a gang, and there was other evidence in the record about the meaning of the marks and that the officer knew the meaning of the marks from other sources.

## 4. Assault— failure to instruct on lesser included offense— not plain error

The failure to instruct on misdemeanor assault with a deadly weapon as a lesser included offense of felonious assault with a deadly weapon with intent to kill was not plain error. All the evidence showed an intent to kill where it tended to show that defendant wore the colors of a rival gang and fired ten shots from a nine-millimeter handgun into a crowd which included members of that gang, killing one of the victims.

## 5. Homicide— failure to instruct on lesser included offense— not plain error

The failure to submit second-degree murder to the jury in a first-degree murder prosecution was not error where defendant approached a group that included members of a rival gang wearing that gang's colors, fired into the group ten times, continued to fire as the victims fled, and there was no evidence of provocation or excuse.

## 6. Sentencing— prior record level—proof—worksheet not sufficient

The trial court erred by setting defendant's prior record level based only upon a worksheet prepared and submitted by the prosecutor. There were no records of conviction, no records from agencies, and no evidence of a stipulation.

Appeal by defendant from judgments dated 1 May 2002 by Judge Henry W. Hight, Jr. in Superior Court, Durham County. Heard in the Court of Appeals 22 May 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General Daniel F. McLawhorn, for the State.*

*Parish and Cooke, by James R. Parish, for defendant-appellant.*

McGEE, Judge.

Antonio Durand Riley, a.k.a Antoine Deandre Riley, (defendant) was convicted of first-degree murder, three counts of assault with a deadly weapon with intent to kill, and possession of a firearm by a

felon on 1 May 2002. The trial court determined defendant had a prior record level III and sentenced him to: life imprisonment without parole for first-degree murder; three consecutive terms of a minimum of 34 months to a maximum of 50 months active imprisonment for the three convictions of assault with a deadly weapon with intent to kill, to begin after the life sentence; and a minimum term of 16 months to a maximum term of 20 months active imprisonment for possession of a firearm by a felon, to begin at the expiration of the last sentence imposed for conviction of assault with a deadly weapon with intent to kill. Defendant appeals.

The evidence presented by the State at trial tended to show that Anthony Peaks and his wife Kristi Peaks (now Brown) walked to the Caroco Station on North Alston Avenue in Durham, North Carolina to visit Mr. Peaks' relatives and friends at approximately 1:00 a.m. on 24 July 2000. After going into the store, Ms. Brown came out and joined her husband who was talking to his relatives, Joseph Pipkin (Pipkin), Charles Johnson (Johnson), and Tyrone Merrill (Merrill). Ms. Brown was facing Leo's Seafood, the restaurant next door, when she saw a black male, later identified as defendant, run around the corner and stand on the loading dock. Ms. Brown was standing approximately eighteen feet from defendant. Pipkin also testified he saw the shooter and identified him as a black male wearing a white tee shirt, jeans, and red shoes. Ms. Brown and another witness described the shooter as wearing a blue baseball hat and having an Afro hairstyle. Defendant pulled out a nine-millimeter gun from his pants, pointed it in the direction of Ms. Brown and the group, shouted words to the effect of, "Blood time, I got you now," or "I got you now, I got you now, Blood—Blood's time," and began firing the gun. Defendant fired approximately ten shots from the gun.

Ms. Brown ran toward the store and was shot in the ankle. Mr. Peaks also began to run and a bullet passed through his left arm into his chest, piercing both lungs and his heart. Mr. Peaks collapsed near the kerosene tanks and died from the gunshot wound. Merrill and Johnson were also shot, each being grazed by a bullet. A store clerk at the service station called the Durham Police Department. An officer found ten shell casings on the loading dock at Leo's Seafood and on the ground nearby. The shell casings were all fired from a nine-millimeter Winchester. An officer also recovered a ball cap from the area of the kerosene tanks at the Caroco Station.

Officer Anthony Smith (Officer Smith), former gang investigator for the City of Durham, testified that the "8 Trey Crips" is active in

Durham and is associated with the "Folk Nation," a national gang also known as the "Crips." The "Bloods" is another gang with members in Durham, associated with the "People Nation." Officer Smith said that "Bloods" typically wear the color red and "Crips" wear the color blue, although at times, rival gang members will wear the other gang's colors to get closer in order to commit violent acts.

Joseph Pipkin (Pipkin) testified that the "Crips" and the "Bloods" were "at war," but that he did not know of many "Bloods" in Durham. Pipkin told Durham Police that he was a friend of "Crips" and that defendant was a "Blood" gang member.

At the time of the shooting, Mr. Peaks was talking with Johnson and Merrill, both associated with the "8 Trey gangsters." Merrill testified that neither Mr. Peaks nor his wife were associated with any gang.

Officer Florencio Rivera (Officer Rivera), a gang investigator for the City of Durham, testified he arrested defendant in August 2000 for outstanding warrants "[f]or this case, homicide, and several armed robberies." He testified that defendant had burn scars on his chest and right arm in the shape of a dog's paw print, which were used by the "United Blood Nation" to identify its members. Officer Rivera took photographs of defendant showing these burn scars. Officer A. H. Holland, Jr. (Officer Holland) testified that defendant went by the nickname "Dirty."

At trial, defendant and the State stipulated that defendant had been convicted of a prior felony before 24 July 2000 and that the State did not need to produce other evidence to prove the element of the prior felony for possession of a firearm by a felon.

Defendant's sister, Carrie Riley (Riley), testified that she and her daughter lived with defendant. She said that on the evening of 23 July 2000 she cooked dinner for the three of them and defendant fell asleep on the couch. Riley testified that when she was awakened by a telephone call around 2:30 or 3:00 a.m., her brother was asleep on the couch. The call was from a friend telling her that there had been a shooting on Alston Avenue near the Caroco Station.

Defendant has failed to present an argument in support of assignments of error 3, 5, 6, 7, and 10, and these assignments are therefore deemed abandoned, pursuant to N.C.R. App. P. 28(b)(6).

I.

**[1]** Defendant first argues two combined assignments of error. He contends that the trial court erred in allowing Officer Rivera to testify that he arrested defendant not only for the murder defendant was on trial for, but also for several armed robberies, for which defendant was not on trial. He argues the trial court erred in failing to strike such testimony *ex mero motu*. Defendant also argues that the trial court erred by allowing testimony by Officer Holland that defendant's nickname was "Dirty," because the testimony was not relevant and any probative value was outweighed by its prejudicial effect.

Defendant requests we review this issue for plain error because, as he points out in his brief, defense counsel did not object at trial to the admission of the challenged evidence. We note that normally, "if a defendant fails to assert plain error in an assignment of error, an appellate court will not conduct plain error review." *State v. Bartley*, 156 N.C. App. 490, 497, 577 S.E.2d 319, 323 (2003) (citing *State v. Truesdale*, 340 N.C. 229, 232-33, 456 S.E.2d 299, 301 (1995); *State v. Lovett*, 119 N.C. App. 689, 693-94, 460 S.E.2d 177, 180-81 (1995)). However, since defendant has specifically and distinctly stated in his brief that the error committed is plain error and has requested a plain error review, we will review this issue for plain error. *See* N.C.R. App. P. 10(c)(4).

First, defendant may not, as he attempts to do in his brief, combine assignments of error concerning unrelated evidence in order to show plain error. In *State v. Holbrook*, 137 N.C. App. 766, 529 S.E.2d 510 (2000), our Court stated:

> As we have noted, the essence of the plain error rule is that it be obvious and apparent that the error affected defendant's substantial rights. If we were to adopt defendant's proposition that the plain error rule may apply cumulatively to several unrelated portions of evidence where the trial judge was not asked to, and did not, make any affirmative ruling, we would be departing from the fundamental requirements of the plain error rule of obviousness and apparentness of error. A trial judge would be required to review all evidence cumulatively for errors of admissibility even though defendant had made no objections to any evidence during trial. We agree with the State that under such a holding, a trial judge would be required to be omniscient. A defendant could fail to make any objection to the admission of evidence at trial, but could then require this Court to cumulatively review the evidence

for possible errors amounting to plain error. Such rule would be in contradiction of our Rules of Civil Procedure and Rules of Appellate Procedure, and the plain error doctrine as defined by the North Carolina Supreme Court. *See State v. Bagley*, 321 N.C. 201, 362 S.E.2d 244 [(1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)]; *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 [(1983)]; *State v. Cummings*, 346 N.C. 291, 488 S.E.2d 550 [(1997), *cert. denied*, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998)]; *State v. White*, 331 N.C. 604, 419 S.E.2d 557 [(1992)].

*Holbrook*, 137 N.C. App. at 769, 529 S.E.2d at 511-12.

We will therefore review each of these assignments of error individually for plain error. In order to show plain error, a defendant must show " 'that absent the error the jury probably would have reached a different verdict.' " *State v. Hartman*, 90 N.C. App. 379, 383, 368 S.E.2d 396, 399 (1988) (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)).

> "[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" ' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.' "

*Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982) (footnotes omitted) (emphasis in original)).

[2] In the present case, Officer Rivera testified that defendant was arrested for outstanding warrants "[f]or this case, homicide, and several armed robberies." Defendant was not tried for any armed robberies in the present case. Defense counsel did not object to Officer Rivera's testimony and the trial court did not strike Officer Rivera's testimony on its own motion. Two eyewitnesses identified defendant as the shooter. The evidence also showed that the shooting was part of a gang war and that defendant was a member of the "Bloods" gang

while several people standing around Mr. Peaks were members of the rival "Crips" gang. Given the overwhelming evidence in the record that defendant committed the crimes charged, defendant has not shown that the failure of the trial court to strike the testimony of Officer Rivera concerning defendant's arrest for several armed robberies "had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (citations omitted).

Officer Holland testified that defendant went by the nickname "Dirty." Defendant argues that this evidence was irrelevant and any probative value it might have is substantially outweighed by its prejudice to defendant. However, under plain error review defendant must show that the alleged error "had a probable impact on the jury's finding of guilt." *Id.* (citations omitted). As explained above, given the overwhelming evidence in the record that defendant committed the crimes charged, defendant has not met his burden to show the admission of this testimony amounted to plain error. Defendant's first argument is overruled.

II.

[3] Defendant next argues that the trial court erred in allowing into evidence, over defendant's objection, several photographs of tattoos or brands on defendant's body, allegedly depicting gang membership, since the information disclosing the existence of these markings was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). During *voir dire*, the trial court granted defendant's motion to suppress a statement taken from the defendant in violation of *Miranda*, 384 U.S. 436, 16 L. Ed. 2d 694. However, during *voir dire*, the trial court allowed the State to introduce, over defendant's objection, photographs of defendant taken by Officer Rivera after defendant's arrest, which showed brands or burn marks on defendant's body. When the State later offered the contested photographs into evidence, defendant did not object. Defendant's argument is therefore subject to the plain error rule. *See* N.C.R. App. P. .10(c)(4). Defendant did not assert in his assignment of error, nor did he specifically and distinctly argue in his brief that the trial court's admission of the photographs amounted to plain error. *See Bartley*, 156 N.C. App. at 497, 577 S.E.2d at 323. In fact, defendant admits that the Fifth Amendment offers him no protection against being compelled to be photographed. *See State v. Carson*, 296 N.C. 31, 38, 249 S.E.2d 417, 422 (1978).

Defendant does argue that the trial court should have excluded Officer Rivera's testimony as to the meaning of the brand because

Officer Rivera obtained the information "from interviewing the defendant and from information on the gang questionnaire filled out by the defendant after he had been advised of his *Miranda* rights and indicated he did not want to be questioned without an attorney." Officer Rivera testified that the burn markings on defendant indicated that defendant was a member of the "Bloods" street gang. Defendant did not object to nor assign error to this testimony. When the error asserted on appeal is not grounded in the objection before the trial court the alleged error is not preserved for appellate review. *State v. Francis*, 341 N.C. 156, 160, 459 S.E.2d 269, 271 (1995). When the objection and assignment of error do not correspond to the argument in the brief, the assignment of error is deemed abandoned under N.C.R. App. P. 28. *State v. Purdie*, 93 N.C. App. 269, 278, 377 S.E.2d 789, 794 (1989). We also note there is other evidence in the record, not objected to or assigned as error by defendant, as to the meaning of defendant's burn mark or tattoo. Further, there is plenary evidence that Officer Rivera knew the meaning of the burn mark or tattoo from sources other than the survey completed by defendant. Defendant therefore would not be able to show that the admission of this testimony amounted to plain error. We dismiss defendant's argument.

## III.

[4] Defendant next argues it was error for the trial court to fail to instruct the jury on the misdemeanor of assault with a deadly weapon as a possible lesser included offense of the charge of felonious assault with a deadly weapon with the intent to kill. At trial, defendant did not request that the trial court include the instruction for misdemeanor assault with a deadly weapon in its charge to the jury. As acknowledged in his brief, defendant must proceed under the plain error rule. *See Odom*, 307 N.C. at 660, 300 S.E.2d at 378 ("every failure to give a proper instruction [does not] mandate[] reversal regardless of the defendant's failure to object at trial"). Under the plain error rule " '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' " *Id.* at 660-61, 300 S.E.2d at 378 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977)). Although defendant did not allege plain error in his assignment of error, he did specifically and distinctly assert that the failure of the trial court to submit the instruction amounted to plain error. *See Bartley*, 156 N.C. App. at 497, 577 S.E.2d at 323.

The only difference in what the State must prove for the offense of misdemeanor assault with a deadly weapon and felony assault

with a deadly weapon with intent to kill is the element of intent to kill. *See State v. Hunter,* 315 N.C. 371, 373, 338 S.E.2d 99, 101-02 (1986); *State v. Maynard,* 311 N.C. 1, 38 n.1, 316 S.E.2d 197, 217 n.1, *cert. denied,* 469 U.S. 963, 83 L. Ed. 2d 299 (1984). Where all the evidence tends to show a shooting with a deadly weapon with the intent to kill, the trial court does not err in refusing to submit the lesser included offense of assault with a deadly weapon. *See State v. Oliver,* 334 N.C. 513, 523, 434 S.E.2d 202, 207 (1993).

"The defendant's intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances." *State v. James,* 321 N.C. 676, 688, 365 S.E.2d 579, 586 (1988) (citation omitted). In the present case, the evidence shows that defendant, a member of the "Bloods" gang, deliberately shot a nine-millimeter handgun ten times into a crowd which included members of a rival gang, from approximately eighteen feet away, after shouting something to the effect of, "I got you now, I got you now, Blood—Bloods time." The evidence also showed that defendant was wearing colors of the "Crips," a technique often used by rival gang members to get close enough to their rivals to inflict injury. The evidence showed that defendant actually killed one of the shooting victims, and that the three counts of assault with a deadly weapon with intent to kill each involved a victim shot by defendant during the same incident. All of the evidence tends to show that defendant shot at the crowd with the intent to kill, and therefore it was not plain error for the trial court to refuse to submit the charge of misdemeanor assault with a deadly weapon to the jury. This argument is overruled.

IV.

**[5]** Defendant also argues that the trial court erred by denying defendant's request to submit to the jury an instruction on the lesser included offense of second-degree murder. Defendant claims that there is not sufficient evidence of a plan or premeditation to kill and a second-degree murder instruction was required. Defendant argues that "[t]he evidence tends to show the defendant happened upon these individuals at the store and began firing."

Second-degree murder is a lesser included offense of first-degree murder. *State v. Goodson,* 101 N.C. App. 665, 668, 401 S.E.2d 118, 120 (1991) (citation omitted). "With the exception of the element of premeditation and deliberation, the elements of the two [offenses] are the same." *Id.* "[A] trial court does not have to submit a verdict of

second-degree murder to the jury unless it is supported by the evidence." *State v. Annadale*, 329 N.C. 557, 567, 406 S.E.2d 837, 843 (1991) (citations omitted). In *State v. Sparks*, our Supreme Court noted that

> [t]he want of provocation, the absence of any excuse or justification for the shooting, the number of shots fired or attempted to be fired, the fact that defendant ran immediately after the shooting, coupled with the other evidence, permitted a legitimate inference of premeditation and deliberation, and was sufficient to be submitted to the jury on the issue of murder in the first degree.

*Sparks*, 285 N.C. 631, 643, 207 S.E.2d 712, 719 (1974) (citations omitted), *death sentence vacated*, 428 U.S. 905, 49 L. Ed. 2d 1212 (1976).

In the present case, the evidence showed that defendant came around the corner onto the loading dock approximately eighteen feet from the murder victim and a group of individuals that included members of the "Crips" gang, rivals of defendant's gang, the "Bloods." Defendant was wearing a blue hat and jeans, the colors worn by the "Crips"—a tactic often employed by gang members to enable them to get close to members of a rival gang. Defendant shouted out something to the effect of, "I got you now, I got you now, Blood—Bloods time," and began shooting into the crowd where the murder victim and the other victims were standing. Defendant fired a total of ten shots into the crowd and continued firing shots even as the victims fled for cover. Defendant then ran from the scene of the shooting. There was no evidence of any provocation or excuse for the shooting. We hold that given the evidence in the record, it was not error for the trial court to refuse to instruct the jury on second-degree murder. Defendant's argument is overruled.

## V.

[6] Defendant next argues the trial court erred in sentencing defendant as a prior record level III as the State did not prove, nor did defendant stipulate to, such a record level pursuant to the North Carolina sentencing statutes. N.C. Gen. Stat. § 15A-1340.14 (2001) requires that each of a felony offender's prior convictions be proven to determine the offender's prior record level. N.C.G.S. § 15A-1340.14 also provides that the State bears the burden of proving any prior convictions by a preponderance of the evidence. N.C. Gen. Stat. § 15A-1340.14(f) (2001) lists several methods the State may use to prove prior convictions:

(1) Stipulation of the parties.

(2) An original or copy of the court record of the prior conviction.

(3) A copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts.

(4) Any other method found by the court to be reliable.

In the present case, the following conversation occurred between the prosecutor and the trial court:

[Prosecutor]: The first thing I would like to do is hand up a prior record worksheet (handing). This obviously is pertaining to the four charges that don't have a mandatory sentence, that being three counts of assault with a deadly weapon with intent to kill, and possession of a firearm by a felon.

I'm showing the worksheet which shows some prior felonies, three prior—actually, four prior felonies, some though—two of them on the same day, basically possession of schedule I and possession with intent to sell and deliver schedule II. Those were the subject of the prior felony. These were from 1999, and were the subject of the firearm by felon case that we have.

Also, in September of last year the defendant was convicted of assault with a deadly weapon inflicting serious injury; also possession of a firearm by a felon. So by the time you add the points, plus the extra point for having the same offense, the firearm by a felon, I'm showing seven points. That would make him a Level III offender for sentencing on those cases.

THE COURT: So he's a Level III on three of the cases, and he's a Level what on the other?

[PROSECUTOR]: Well, actually he's a Level III for everything but the first-degree murder. First-degree murder, he would technically be a Level III as well, but since there's a mandatory statutory sentence, it really doesn't matter what the record level is.

In addition to this discussion about defendant's prior record level, the State also contended that because the crimes were committed for the benefit of, or in the context of, gang activity, this should be considered as an aggravating circumstance. The State asked for aggravated range for the four sentences besides the first-

**STATE v. RILEY**

[159 N.C. App. 546 (2003)]

degree murder sentence. Defendant asked for mercy with regard to any sentence imposed and did not object to the information on the worksheet or the statements made by the prosecutor in reference to defendant's prior record level.

The trial court sentenced defendant to life without parole for the first-degree murder charge, and for the remaining convictions, sentenced defendant to consecutive terms of imprisonment within the presumptive range for a prior record level III.

The State presented no evidence in the form of a stipulation by the parties, a copy of the court record of defendant's prior convictions, nor a copy of any record maintained by the Division of Criminal Information, the Division of Motor Vehicles, or the Administrative Office of the Courts. The State simply handed the trial court a worksheet filled out by the prosecutor and made the unsupported statements identified above as to defendant's prior record level.

We do not find evidence in the record that would indicate that the State carried its burden of proving each prior conviction by a preponderance of the evidence. As stated above, the State submitted no records of conviction, no records from the agencies listed in N.C.G.S. § 15A-1340.14(f)(3), nor is there any evidence of a stipulation by the parties as to prior record level. A statement by the State that an offender has seven points, and thus is a record level III, if only supported by a prior record level worksheet, is not sufficient to meet the catchall provision found in N.C.G.S. § 15A-1340.14(f)(4), even if uncontested by defendant. *State v. Mack*, 87 N.C. App. 24, 34, 359 S.E.2d 485, 491 (1987), *disc. review denied*, 321 N.C. 477, 364 S.E.2d 663 (1988); *see State v. Hanton*, 140 N.C. App. 679, 690, 540 S.E.2d 376, 383 (2000). We must therefore remand this case for a resentencing hearing.

No error in trial; remanded for resentencing.

Judges McCULLOUGH and CALABRIA concur.