STATE OF NORTH CAROLINA v. MARCUS ELRON PETRO

No. COA03-1558

(Filed 4 January 2005)

**1. Kidnapping— second-degree—failure to instruct on false imprisonment as lesser-included offense**

The trial court did not err by denying defendant's request to instruct the jury on the charge of false imprisonment as a lesser-included offense of second-degree kidnapping, because: (1) defendant's theory of the case is that a letter written by the victim accurately portrayed the events of 20 August 2001 and negates a purpose to terrorize the victim at any point during that time; (2) defendant's theory, if believed, eliminates not only the purpose element required for second-degree kidnapping, but also the unlawful restraint element of both second-degree kidnapping and false imprisonment; and (3) the jury would therefore have to find defendant guilty of second-degree kidnapping if the victim's testimony was believed or not guilty of any offense if the victim's letter was believed.

**2. Constitutional Law— effective assistance of counsel— appointed counsel—necessary experience—local rules— invited error**

Defendant was not denied effective assistance of counsel in a second-degree kidnapping and assault on a female case based on the fact that his appointed counsel did not have the required experience in excess of three years for appointment to a second-degree kidnapping case according to the rules in effect for appointment of counsel for the judicial district in which his trial took place, because: (1) defendant cites no authority for the proposition that a violation of local rules regarding the appointment of counsel denies a defendant the right to counsel; (2) even if the premise were true, defendant failed to raise this constitutional issue to the trial court and it is therefore waived; and (3) defendant's counsel was appointed for the assault charge as permitted under the local rules and only after defendant expressed his desire that his counsel be officially appointed to the second-degree kidnapping charge did his counsel move to be appointed counsel of record on that charge.

**3. Evidence— prior crimes or bad acts—assault**

  The trial court did not abuse its discretion in a second-degree kidnapping and assault on a female case by admitting testimony under N.C.G.S. § 8C-1, Rule 404(b) by defendant's ex-girlfriend concerning an alleged assault on her by defendant in the summer of 1999, because: (1) in each instance, the evidence tended to show defendant isolated and abused the victims, alternated between anger, repentance, and fear of going to jail, and caused an imminent fear of death; (2) in each instance, defendant offered to procure medical aid for the victims; (3) after the assaults, defendant continued to contact the victims and convinced them to accompany him to a hotel where he again held them against their will; (4) the similarities indicate a common plan or design on the part of defendant, and the witness's testimony served a purpose other than to show mere propensity to commit the crime charged; and (5) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

  Appeal by defendant from judgments entered 30 August 2002 by Judge Melzer A. Morgan, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 16 September 2004.

  *Attorney General Roy Cooper, by Assistant Attorney General Joyce S. Rutledge, for the State.*

  *Megerian & Wells, by Franklin E. Wells, Jr., for defendant-appellant.*

CALABRIA, Judge.

  Marcus Elron Petro ("defendant") appeals judgments entered on jury verdicts of guilty of one count of second-degree kidnapping and one count of assault on a female, which was enhanced as a result of defendant's plea of guilty to habitual misdemeanor assault. Defendant was sentenced to consecutive terms of a minimum term of 34 months to a maximum term of 50 months and a minimum term of 8 months to a maximum term of 10 months, respectively, in the North Carolina Department of Correction. We find no error.

  In the late spring of 2001, defendant and Amanda Chapman (the "victim") met at a bar where the victim was employed. They developed a friendship that evolved into an intimate relationship. Shortly thereafter, defendant moved into the victim's residence.

STATE v. PETRO

[167 N.C. App. 749 (2005)]

On or about 20 August 2001, defendant was involved in an altercation where the victim worked. As a result, he was expelled from the bar. Later that morning between three and four o'clock, defendant and the victim returned to her residence and discussed the earlier altercation. The discussion escalated into an argument concerning previous disagreements. When the victim perceived defendant was getting angry, she attempted to calm him, but defendant told her to "shut up" and hit her in the head with his hand, causing her to bleed. Defendant apologized and offered to call 911 for help, but the victim asked for time to see how she felt and decide whether she needed emergency assistance. Defendant joined the victim in the bathroom and started "freaking out again." Although he told the victim he was "mad at himself for hitting" her, he "hit [the victim] on the other side of [her] head because he was mad at himself." This second blow caused dizziness and bleeding.

The victim started crying and pleading with the defendant to stop. This also angered defendant, and he warned her, "The more you cry, the worse it's going to get." He pulled the victim into her bedroom, made sure there were no communication devices in the room, and put her on the bed. Defendant became "frantic" with concern that the incident would "get [him] in . . . trouble" and "he would . . . [have to go to] jail." Defendant then got on the bed with the victim, straddled her, told her to "shut up," and started hitting her. Defendant got a pair of needle-nose pliers, "reared back with the pliers like he was going to . . . put th[em] in [the victim's] neck," and told her, "[I]t will be okay in just a couple of minutes. It will all be over." After repeating these actions a few times, defendant relented and tired. He placed his legs over the victim when he went to sleep.

The next morning, the victim's mother ("Ms. Watkins") came to her residence because she was concerned when the victim failed to pick up her daughter at the normal time. Ms. Watkins had a key to the victim's residence but was unable to enter because the door was latched. Defendant allowed the victim to open the door, whereupon the victim left with her daughter and Ms. Watkins. Ms. Watkins called the police, and defendant fled.

Defendant and the victim continued to communicate. Defendant was apprehended, but the victim posted bail. The victim also wrote a letter stating it was her belief she had been drugged and was hallucinating on the night of 20 August 2001. She further stated her injuries were self-inflicted and she abused and threatened defendant. The letter went on to assert that defendant's sole motive in restraining her

and staying up with her that night was to prevent her from "caus[ing] harm to [her]self and quite possibly others." The victim's letter concluded that defendant spent the night trying to help and calm her as opposed to hurting her. Thereafter, the relationship between the victim and defendant continued until they went to a hotel together, where defendant again assaulted the victim. Subsequently, the victim terminated the relationship and testified against defendant at trial.

At trial, the trial court admitted, over defendant's objection, testimony from Crystal Woods ("Woods") concerning her previous relationship with defendant. This testimony, which involved allegations of abuse and kidnapping, was admitted by the trial court under Rule 404(b) as evidence of a common plan and design. At the close of the State's evidence and again at the close of all the evidence, defendant moved to dismiss the charges against him. The trial court denied both motions. At the charge conference, defendant requested an instruction on false imprisonment based on the recounting of events set forth in the victim's letter. The trial court denied submitting the false imprisonment charge to the jury. The jury convicted defendant of second-degree kidnapping and assault on a female. Defendant appeals.

On appeal, defendant asserts the trial court erred by (I) failing to instruct the jury on false imprisonment, (II) appointing counsel with less experience than required by the applicable provisions for the charges, and (III) admitting evidence pursuant to Rule 404(b).

I. Jury Instruction

[1] In his first assignment of error, defendant asserts the trial court erred in denying his request to instruct the jury on the charge of false imprisonment as a lesser included offense of second-degree kidnapping. "The law is well settled that the trial court must submit and instruct the jury on a lesser included offense when, and only when, there is evidence from which the jury could find that defendant committed the lesser included offense." *State v. Boykin*, 310 N.C. 118, 121, 310 S.E.2d 315, 317 (1984). Second-degree kidnapping occurs when the victim is released in a safe place without having been sexually assaulted or seriously injured and the following elements, in relevant part, are met: "(1) [unlawful] confinement, restraint, or removal from one place to another; (2) of a person; (3) without the person's consent; (4) for the purpose of [terrorizing the victim]." *State v. Lucas*, 353 N.C. 568, 582-83, 548 S.E.2d 712, 722 (2001); N.C. Gen. Stat. § 14-39 (2003). The elements of the lesser included offense of false

imprisonment are the (1) intentional and unlawful, (2) restraint or detainment of a person, (3) without that person's consent. *State v. Miller*, 146 N.C. App. 494, 505, 553 S.E.2d 410, 417 (2001).

Defendant's theory of the case is that the letter written by the victim accurately portrayed the events of 20 August 2001, and this evidence negates a purpose to terrorize the victim at any point during that time. The State contends that defendant's theory, if believed, eliminates not only the purpose element, required for second-degree kidnapping, but also the unlawful element of both second-degree kidnapping and false imprisonment; therefore, the jury would have to find defendant guilty of second-degree kidnapping if the victim's testimony was believed and would have to find defendant not guilty of any offense if the victim's letter was believed. We agree with the State.

A prominent expert on criminal law has observed that "[o]ne who reasonably believes that a felony, or a misdemeanor amounting to a breach of the peace, is being committed, or is about to be committed, in his presence may use reasonable force to terminate or prevent it." 2 W. LaFave, *Substantive Criminal Law* § 10.7(c) (2d ed. 2003). In the instant case, the victim's letter, if believed, sets forth circumstances of violent actions resulting in pronounced self-inflicted bodily injuries by an individual who admitted it was "quite possibl[e]" she would have inflicted violence upon others had she been allowed to leave. Under this set of facts, defendant restrained a violent and hallucinating victim in the comfort of her home and bedroom until she fell asleep without threats or violence. The following morning when the victim had recovered her normal faculties, defendant did nothing to prohibit her from leaving. We are of the opinion that this restraint would not be unlawful in light of the circumstances surrounding the detention and the nature of the offense that could reasonably be expected to occur, given the victim's state of mind and evidenced by the nature and extent of her self-inflicted injuries. Accordingly, if the jury accepted the recounting of events contained in the letter, defendant would not have unlawfully restrained the victim; therefore, the trial court did not err in rejecting defendant's instruction on the lesser included offense. This assignment of error is overruled.

II. Right to Counsel

**[2]** In his second assignment of error, defendant asserts he was denied his right to counsel because "his attorney was appointed in violation of rules requiring experience in excess of three years for

appointment to [second-degree kidnapping,] a Class E felony."
Defendant's assertion is premised on the rules in effect for appoint-
ment of counsel for the judicial district in which his trial took place,
which precluded defendant's counsel from representing him on a
Class E felony due to insufficient experience. As to any constitutional
argument, defendant cites no authority for the proposition that a vio-
lation of local rules regarding the appointment of counsel denies a
defendant of the right to counsel, nor are we persuaded it does so.
Moreover, even if we were to accept the premise, defendant failed to
raise this constitutional argument to the trial court and has, thereby,
waived it. *See State v. Jaynes*, 342 N.C. 249, 263, 464 S.E.2d 448, 457
(1995) (noting that "[e]ven alleged errors arising under the
Constitution of the United States are waived if defendant does not
raise them in the trial court").

Regarding any argument premised upon the local rules, defend-
ant's counsel was appointed for the assault charge as permitted under
the local rules and, only after defendant "expressed his desire that
[his] counsel be officially appointed to [the second-degree kidnapping
charge]," did his counsel move to be appointed counsel of record on
that charge. The record reveals defendant, his counsel, the district
attorney, and the court all considered defendant's counsel competent
to undertake the defense. Any violation of the local rules that
occurred was occasioned by defendant's invitation. This assignment
of error is overruled.

III. Evidentiary Ruling

[3] In his last assignment of error, defendant asserts the trial court
improperly admitted, under N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003),
Woods' testimony concerning an alleged assault on her by defendant
in the summer of 1999. Rule 404(b) provides, "Evidence of other
crimes, wrongs, or acts is not admissible to prove the character of a
person in order to show that he acted in conformity therewith." N.C.
Gen. Stat. § 8C-1, Rule 404(b). Our Supreme Court has

> held that Rule 404(b) is a "clear general rule of *inclusion* of
> relevant evidence of other crimes, wrongs or acts by a defend-
> ant, subject to but *one exception* requiring its exclusion if its
> *only* probative value is to show that the defendant has the
> propensity or disposition to commit an offense of the nature of
> the crime charged."

*State v. Lloyd*, 354 N.C. 76, 88, 552 S.E.2d 596, 608 (2001) (quoting
*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990)).

Accordingly, evidence of other offenses is *admissible* so long as it is *relevant to any fact or issue other than* the character of the accused. In addition to the requirement that the evidence be offered for a purpose other than to show criminal propensity, the admissibility of evidence under [Rule 404(b)] is guided by two further constraints—similarity and temporal proximity [of the acts].

*Id.* (internal citations and quotation marks omitted).

Woods' testimony tended to show that she and defendant were involved in an intimate relationship and defendant lived with her "off and on." Following an altercation between Woods and defendant at a bar where they had been drinking, defendant drove Woods to his grandparents' house. During the drive, defendant struck Woods, causing her to bleed. After arriving at his grandparents' and determining they were not home, defendant "dr[ug] [Woods] into the house," held her for eight hours, stripped and raped her, and beat her with his hands and various implements. While defendant was holding Woods, he repeatedly apologized and expressed concern about "go[ing] to jail." Woods testified that she thought she "was going to die." After the assault, defendant offered to take Woods to the hospital. When she declined, defendant took her and held her at her apartment until the following morning when he left. Despite these actions, defendant convinced Woods to go with him to a hotel, where he held her against her will a second time and "pushed [her] around."

Defendant correctly points out that the alleged assault on Woods involved a sexual assault and that defendant used implements in the abuse in addition to his hands. However, in each instance, the evidence tended to show defendant isolated and abused the victims, alternated between anger, repentance, and fear of going to jail, and caused an imminent fear of death. In each instance, defendant offered to procure medical aid for the victims. After the assault, defendant continued to contact the victims and convinced them to accompany him to a hotel where he again held them against their will. We think these similarities sufficiently indicate a common plan or design on the part of defendant, and Woods' testimony served a purpose other than to show mere propensity to commit the crime charged.

Nonetheless, evidence of the assault on Woods may have been excluded if its probative value was substantially outweighed by the danger of unfair prejudice under N.C. Gen. Stat. § 8C-1, Rule 403 (2003). "The determination of whether to exclude such evidence is a

matter left to the sound discretion of the trial court, and its determination will not be disturbed on appeal absent an abuse of discretion." *Lloyd*, 354 N.C. at 90-91, 552 S.E.2d at 609. In the instant case, the trial court admitted the evidence of the assault on Woods for the limited purpose of showing a common plan or design. After considering the similarity in factors and the proximity of the two assaults, the trial court found "the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice" and overruled defendant's objection. The trial court did not abuse its discretion in its ruling on the evidence, and this assignment of error is overruled.

No error.

Judges ELMORE and STEELMAN concur.